**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 1:21-cr-00491 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Johnathan D. Greenburg |
| PAUL SPIVAK, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

This white-collar criminal case involves voluminous discovery of electronically

stored information more characteristic of complex civil litigation than a typical

federal prosecution.  As often happens, such discovery involves tremendous time and

resources, and the parties encounter unforeseen technical and other hurdles

associated with productions.  Although the bench and bar have developed tools that

work reasonably well (though, of course, there are still important issues) to handle

discovery of electronically stored information in civil litigation, primarily through

early disclosures and discussions between the parties and their technical advisers,

practice and procedure in criminal cases appear to lag behind.

In this case, counsel have worked cooperatively, professionally, and diligently

to handle and resolve these issues and disputes as they have arisen, but have reached

an impasse where the United States maintains that it has discharged its discovery

obligations and Defendants disagree.  In addition to the legal question before the

Court, the technical issues relating to discovery of electronically stored information

also involve practical considerations, such as the associated burdens of production and review and how much time the parties need to prepare for trial, which might have constitutional dimensions. At minimum, the public and all parties share an interest in seeing this case proceed to trial as soon as reasonably practicable in a manner that enables them fairly to present their respective cases. At some level, the format in which the United States provides discovery to Defendants bears on this issue. In this ruling, the Court attempts to navigate these competing considerations within the strictures of formal rules governing criminal discovery.

## FACTUAL AND PROCEDURAL BACKGROUND

In the forty-seven count superseding indictment, the United States charges Paul Spivak, his wife Olga Smirnova, and others with conspiracy to commit securities fraud and wire fraud in a pump-and-dump scheme through US Lighting Group, Inc., a publicly traded company. (*See generally* ECF No. 33, ¶¶ 14–28, PageID #286–88.) During the times at issue, Mr. Spivak served as the chief executive officer of US Lighting Group, and Ms. Smirnova as its vice president. (*Id.*, ¶¶ 10 & 14, PageID #283 & #286.)

### A.    Discovery

After Mr. Spivak's arrest, in June 2021 the United States searched US Lighting Group's offices in Euclid, Ohio and seized, among other things, twenty electronic devices, including a server, computers, hard drives, and USB thumb drives. (ECF No. 163, PageID #1010; ECF No. 165, PageID #1087.) Mr. Spivak and Ms. Smirnova sought discovery from the United States. (ECF No. 16; ECF No. 165, PageID #1087.)

In discovery, the United States produced a substantial number of materials to Defendants.  (ECF No. 163, PageID #1009–10.)  Those items include:  (1) fifty-eight recorded calls or meetings among Defendants; (2) three discs containing forty-eight days' worth of Mr. Spivak's indexed jail calls; (3) nearly 370,000 pages of processed grand jury subpoena returns; and (4) forensic images of the computers and devices seized and returned to US Lighting Group along with a list of where the devices were located when they were seized.  (*Id.*)

Counsel for the parties have had extensive discussions with one another and the Court regarding discovery in this case, extending far beyond the specific materials that are the subject of the present dispute.  The discovery at issue is data extracted from the fourth category of materials:  forensic images of twenty devices, including one computer server, ten computers, two external hard drives, and seven flash drives. (ECF No. 163, PageID #1010.)

At a status conference on December 1, 2021, the first conference following the return of the superseding indictment, the United States represented that the FBI was still working to process the electronic data and information from the devices seized in the search of US Lighting Group's offices in June 2021.  (ECF No. 141, PageID #735.)  Of particular importance here, the United States stated that it was working to provide that information "in a format that is a load file format."  (*Id.*, PageID #737.)  Specifically, the assistant United States Attorney intended to provide the electronic discovery with metadata intact in a format that defense counsel could load onto a discovery review platform that would facilitate their review and

preparation for trial, as opposed to providing the data in a static format, such as PDF files, that would require further processing, review, or analysis at great cost over additional weeks or months for meaningful review.  (*Id.*)  As noted in his brief on the issue, production in this manner is aimed to "facilitate a faster review of the discovery by providing the computer content with the metadata intact . . . that could easily be imported into defendant's chosen discovery review platform."  (ECF No. 163, PageID #1010–11.)  Again, at a status conference on April 11, 2022, the United States represented that it was working to provide load files in various formats containing this discovery.  (ECF No. 146, PageID #841–42.)  Again, counsel have had far more extensive communications on the subject, and the record reflects that they have worked diligently and professionally on a large number of pretrial issues.

On September 7, 2022, the United States filed a notice contending that it has substantially complied with its discovery obligations under Rule 16 of the Federal Rules of Criminal Procedure.  (ECF No. 142.)  At a subsequent status conference, Mr. Spivak and Ms. Smirnova disagreed, and the Court requested briefing on the matter. (Minutes, Sept. 12, 2022.)

### B.    The Discovery Issue

Instead of producing forensic images of the twenty devices at issue in a load file, the United States produced a folder titled "USLG BIDMAS," which contains just over 421,000 files from the twenty electronic devices seized from US Lighting Group's offices.  (ECF No. 167, ¶ 9, PageID #1113.)  According to Defendants, the United States failed to produce certain metadata, which rendered the production "nothing more than a massive data dump."  (ECF No. 165, PageID #1088; ECF No. 167,

¶¶ 10–14, PageID #114–15.)  The United States concedes that it produced the data "in a way that is useful to the FBI's investigative mission but not ideal for . . . litigation." (ECF No. 163, PageID #1011.)  It also acknowledges that the extracted content does not account for all of the data on each device such that "its production in load file format does not mean that the defense has all of the information they are entitled to under Rule 16." (*Id.*)  Accessing all of that data requires Defendants to review the images the United States has produced—a laborious and time-consuming endeavor. (*Id.*)

### C.    Options for Resolving the Discovery Issue

To resolve this discovery issue, the United States proposes four options in increasing complexity, time, and effort for it to complete:

*Option 1.*  Defendants review the available images previously produced and extract the data as necessary, which can be done through FTK Imager, a free and publicly available imager. (ECF No. 163, PageID #1011–12.)  Defendants take issue with this option.  Defendants assert that FTK Imager simply is not feasible; it is not a document review tool, and it does not allow "Defendants the ability to quickly and effectively search for potentially relevant documents." (ECF No. 165, PageID #1090; *see also* ECF No. 167, ¶¶ 15–16, PageID #1115–16.)

*Option 2.*  The United States produces a spreadsheet containing the correct metadata for each file produced so that Defendants can cross-reference as they review the relevant data produced. (ECF No. 163, PageID #1012.)  Defendants assert that this option presents a herculean task for them manually to cross-reference the

spreadsheet as they are reviewing the 421,000 files the United States provided. (ECF No. 165, PageID #1090; ECF No. 167, ¶ 18, PageID #1116–17.)

*Option 3.*  The United States proposes to reprocess the files and provide them to Defendants in a storage device. (ECF No. 163, PageID #1012.)  This option might result in the loss of some metadata fields. (*Id.*)  At the October 24, 2022 hearing, the United States indicated that it prefers working toward providing discovery through this option.  In response, Defendants contend that the risk of lost metadata renders this option unworkable. (ECF No. 165, PageID #1091.)

*Option 4.*  The United States sends a new load file of the content data with corrected metadata.  The United States represents that this option would require "approximately 10% of the FBI Cleveland Division's forensic computers and would likely take several months to complete." (ECF No. 163, PageID #1012.)  Of the available choices, Defendants prefer this option. (ECF No. 165, PageID #1091.)

Instead of proceeding with any of these options, however, Defendants request that the United States honor its promises of producing discovery in a load file containing metadata that will enable Defendants to identify the source of the data and work with it in a way that facilitates and expedites review. (*Id.*, PageID #1086.)

## ANALYSIS

Rule 16 of the Federal Rules of Criminal Procedure governs discovery in criminal cases.  As relevant here, it provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy . . . papers, documents, data, . . . or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:

> (i)     the item is material to preparing the defense;
>
> (ii)    the government intends to use the item in its case-in chief at trial; or
>
> (iii)   the item was obtained from or belongs to the defendant.

Fed. R. Crim P. 16(a)(1)(E).  Unlike the broad scope of discovery available to parties in civil cases, discovery in criminal cases is more limited.  "[D]iscovery afforded by Rule 16 is limited to the evidence referred to in its express provisions." *United States v. Presser*, 844 F.2d 1275, 1285 (6th Cir. 1988).  "[I]n most criminal prosecutions, the *Brady* [*v. Maryland*, 373 U.S. 83 (1963),] rule, Rule 16 and the Jencks Act[] exhaust the universe of discovery to which the defendant is entitled." *Id.* at 1285 n.12 (citing *United States v. Napue*, 834 F.2d 1311, 1316–17 (7th Cir. 1987), and *United States v. Bouye*, 688 F.2d 471, 473 (7th Cir. 1982)).  Indeed, "there is no general constitutional right to discovery in a criminal case." *Id.* at 1281 (quoting *Weatherford v. Bursey*, 429 U.S. 545, 559 (1977)).

Even so, district courts "may have some inherent power to enter specific orders compelling the disclosure of specific evidence when justice requires it." *Id.* at 1285 n.12.  Additionally, the law of this Circuit recognizes that Rule 16 "is intended to prescribe the minimum amount of discovery to which the parties are entitled, and leaves intact a court's discretion to grant or deny the broader discovery requests of a criminal defendant." *United States v. Richards*, 659 F.3d 527, 543 (6th Cir. 2011) (quoting *United States v. Jordan*, 316 F.3d 1215, 1249 n.69 (11th Cir. 2003)).

7

## I.     Compliance with Rule 16

The United States asserts that it has substantially complied with Rule 16 and "has gone beyond its standard practice" by, among other things, providing supplemental information such as lists of the individual in the various recordings and load files where feasible.  (ECF No. 163, PageID #1013.)

### I.A.    Sixth Circuit Law

In support of its position, the United States relies primarily on two decisions from the Sixth Circuit.  *First*, in *United States v. Warshak*, 631 F.3d 266, 295 (6th Cir. 2010), the defendants argued that "the district court erroneously permitted the government to produce titanic amounts of electronic discovery in formats that were simultaneously disorganized and unsearchable."  Specifically, the electronic data at issue "were difficult to search," and the prosecution's failure to provide indices prejudiced the preparation of an adequate defense.  *Id.*  In making these arguments, the defendants in *Warshak*, like Defendants here, relied on Rule 34 of the Federal Rules of *Civil* Procedure and also urged that due process mandates enforcement of the civil rule in the criminal context.

In rejecting this argument, the Sixth Circuit noted that the defendants in *Warshak*, like Defendants here, cite "scant authority suggesting that a district court must order the government to produce electronic discovery in a particular fashion." 631 F.3d at 296.  Further, the court pointed out that Rule 16 "is entirely silent on the issue of the form that discovery must take; it contains no indication that documents must be organized or indexed." *Id.*  Because the electronic data at issue came from the computers of the defendants' company, the defendants had access to that

information as it was kept in the usual course of business, and the prosecution provided the defense with a guide to assist in navigating the data. For these reasons (and, unlike here, because the record showed the defendants had little difficulty accessing the data at issue), the Sixth Circuit concluded that the district court did not abuse its discretion by not ordering the prosecution to produce data in a manner more closely resembling civil discovery.

*Second*, in *United States v. Richards*, 659 F.3d 527, 531, 543, 545 (6th Cir. 2011), the Sixth Circuit rejected the defendant's claim that the district court abused its discretion by not requiring the United States to identify, among some 20,000 files, "a list of a dozen or so files/images with a corresponding representation of which files/images related to each count in the Indictment." Relying on *Warshak*, the court concluded that the prosecution complied with its obligations under Rule 16 by "timely provid[ing] a comprehensive, indexed list of the images and files" to the defendant's attorney and assisting to "facilitate the defense's review of the files." *Id.* at 545.

## I.B.    Substantial Compliance

Here, as in *Warshak*, the forensic images of the computer hard drives originate from Defendants' own devices, which the United States has returned. Also, as in *Richards*, the United States has assisted Defendants' review of the files by providing indices and inventories. Further, the United States represents that it does not presently intend to present evidence as part of its case-in-chief at trial from the data at issue and offers four proposals to facilitate Defendants' review of the data under the circumstances. (ECF No. 163, PageID #1012.) For these reasons, the Court determines that the United States has substantially complied with its discovery

9

obligations.  Federal law does not presently require that the United States provide discovery in any specific format in a criminal case.  Rule 16 provides what the United States must disclose, but does not speak to the particular form of disclosure.  *See Warshak*, 631 F.3d at 296 (noting that Rule 16 does not require indexing or organizing discovery in a specific way).

### I.C.  Defendants' Arguments

Defendants argue that the Court should enforce the promise the prosecutor made to produce "the seized materials in a load format that could be put into a discovery review platform." (ECF No. 165, PageID #1094; *see also id.*, PageID #1086.) Also, Defendants ask the Court to look to civil practice because "the law in criminal cases is still undeveloped with regard to the Government's burden to produce its potential evidence in a format that a criminal defendant can actually use." (*Id.*, PageID #1092.)  In doing so, Defendants rely on *United States v. O'Keefe*, 537 F. Supp. 2d 14, 18–19 (D.D.C. 2008), where the magistrate judge looked to the civil rules for guidance on the appropriate format for the government's production of electronically stored information in a criminal case.

But Rule 16 and the law of this Circuit does not require the United States to produce discovery in any specific format in criminal cases.  And Rule 16 and federal law generally define the outer bounds of the discovery to which a defendant is entitled, subject to a court's discretion to order specific disclosures where appropriate. Additionally, cooperation between prosecutors and agents to produce electronic data and information in a reasonably usable format should be encouraged to facilitate effective and efficient pretrial preparation.  Holding the prosecutor in this case to a

10

good-faith commitment in the face of unforeseen technical and logistical hurdles risks discouraging that necessary cooperation.

As for using civil practice as a guide for electronic discovery in criminal matters, the law of the Circuit generally forecloses doing so.  Indeed, in *Warshak* the Sixth Circuit dismissed *O'Keefe*'s use of Rule 34 to inform criminal discovery for electronically stored information.  631 F.3d at 296 n.26.  That said, discovery of electronically stored information presents an area where criminal practice might—and probably should—follow the lead of civil discovery, as it has in the area of expert disclosures in the forthcoming amendment to Rule 16(a)(1)(G), modelled after Rule 26(a)(2) of the Federal Rules of Civil Procedure.  Even if it does not as a formal matter, surely by now federal investigators have sufficient knowledge and experience with processing and producing large volumes of electronically stored information in usable formats for both prosecutors and defense lawyers.  Given those resources, in most cases few non-tactical reasons should prevent the production of discovery in a reasonably usable format.  After all, what Defendants seek here is not unreasonable and more or less commonplace in comparable civil litigation today.

## II.   Discovery Moving Forward

As the United States notes, "the extracted content is not *all* of the computer data on each device; its production in load file format does not mean that the defense has all of the information they are entitled to under Rule 16," which still requires "review [of] the images . . . to access all of the data."  (ECF No. 163, PageID #1011.)  Based on the parties' arguments, both in briefing and at the hearing on October 24, 2022, the Court directs the United States to pursue Option 3 it presented in its

11

briefing.  Under the circumstances, the Court finds that this option has the best chance of efficiently and fairly closing out the discovery from the United States in a way that will not unduly prolong pretrial proceedings and bring the case to trial as promptly as possible.  If the loss of metadata becomes an issue under this approach, further intervention from the Court might be necessary.

## CONCLUSION

For the foregoing reasons, the Court finds that the United States has substantially complied with its discovery obligations and directs the United States to move forward with Option 3.

**SO ORDERED.**

Dated:  November 3, 2022

J. Philip Calabrese
United States District Judge
Northern District of Ohio