IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PAUL SPIVAK, et al.,<br><br>Defendants. | ) CASE NO. 1:21-CR-00491-JPC-2<br>)<br>) JUDGE J. PHILIP CALABRESE<br>)<br>)<br>)<br>) **MOTION OF DEFENDANT OLGA**<br>) **SMIRNOVA TO BIRFUCATE**<br>) **COUNTS 1 AND 2 IN THE SECOND**<br>) **SUPERSEDING INDICTMENT**<br>) **FROM THE SAME TRIAL AS**<br>) **COUNTS 48, 49, AND 50**<br>) |

**(Oral Argument Requested)**

NOW COMES, Olga Smirnova, by and through undersigned counsel, and, pursuant to Rule 14 of the Federal Rules of Criminal Procedure, moves this Court for the entry of an order bifurcating the counts in the Second Superseding Indictment ("SSI") such that Counts 1 and 2 are tried separately from Counts 48 through 50.

As detailed in the Memorandum of Law that accompanies this Motion, Ms. Smirnova will be substantially prejudiced if Counts 1 and 2 and Counts 48 through 50 are tried in the same trial. Bifurcating Counts 1 and 2 from the trial of Counts 48 through 50 will prevent that prejudice and avoid the risk that the jury will render an unreliable verdict in this case. Ms. Smirnova believes that the opportunity for oral argument on this motion may assist the Court.

Respectfully submitted,

*/s/  John F. McCaffrey*
John F. McCaffrey (0039486)
Anthony R. Petruzzi (0069102)
Melissa Z. Kelly (0077441)
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
Telephone:   216.696.3486
Facsimile:   216.592.5009
Email:   john.mccaffrey@tuckerellis.com
anthony.petruzzi@tuckerellis.com
melissa.kelly@tuckerellis.com

*Attorneys for Defendant Olga Smirnova*

# MEMORANDUM OF LAW

## I. Introduction and Background

On June 29, 2023, the Government filed a Second Superseding Indictment ("SSI") in this case. (*See* SSI, ECF Doc. 206.) The SSI alleges a "pump and dump" scheme related to stock in USLG, a company founded by Ms. Smirnova's husband and co-defendant, Paul Spivak.[1]

### A. Ms. Smirnova is named as a Defendant only in Counts 1 and 2 of the SSI.

The SSI contains 44 counts.[2] Ms. Smirnova is named in only the first two, which allege conspiracies to commit securities fraud – *i.e.,* one from 2016 through 2019 (Count 1, ¶¶ 37-41) and the other from February 15, 2021 through June 7, 2021 (Count 2, ¶¶ 42-46).

In addition to Ms. Smirnova, Count 1 charges Mr. Spivak, Charles Scott, and Christopher Bongiorno with conspiracy. (*Id.* at ¶ 38.) With respect to the overt acts in support of the alleged conspiracies, Counts 1 and 2 make scant reference to Ms. Smirnova.

Count 1 charges Mr. Spivak, Charles Scott, and Christopher Bongiorno with conspiracy. (*Id.* at ¶ 38.). Ms. Smirnova is rarely referenced in Count 1 of the SSI, which alleges 95 specific overt acts. (*See* SSI at ¶¶41(a)-41(qqqq).) For example, Count 1 of the

---

[1] Contemporaneous with the filing of this motion, Ms. Smirnova has jointly filed separate motions with Defendant Paul Spivak seeking the dismissal of Count 1 and dismissal of Count 2 of the SSI. Ms. Smirnova incorporates by reference the applicable Statement of Facts from Section II of the joint motion to dismiss Count 2 of the SSI into this motion.

[2] The counts in the SSI are numbered 1-50, but, as the SSI notes, counts 3-4 and 14-17 are "intentionally omitted." (SSI, Doc. 206 at p. 35, PageID #:1443.)

SSI points to six text messages where Ms. Smirnova was apparently one of several recipients, yet never participated in the communication:

- ¶41(o): On or about September 8, 2016, SPIVAK and Mallion exchanged a series of text messages with SPIVAK, Mallion, SMIRNOVA, and Co-Conspirator 1 regarding the sale of USLG stock:

    SPIVAK: "When the hell r u sending money?"

    Mallion: "Gave dale money from legal fees paying transfer agent"

    Mallion: "Was waiting on two investors to send money into escrow"

    Mallion: "And stock to clear"

    SPIVAK: "Well there ain't gonna be no mother ship ! ! !"

    Mallion: "F**k"

    SPIVAK: "We just all believe ur not capable of doing what you promised . And we're thinking of selling the shell…

    Mallion: "I said free trading not private"

- ¶41(p): Later on the same date [9/8/2016], SPIVAK and Mallion exchanged a series of text messages with SPIVAK, Mallion, SMIRNOVA, and Co-Conspirator 1 regarding the sale of USLG:

    SPIVAK: "Richard, you gave only sent us 15k in the months we have been doing this, but this stupid audit has cost us far more in man power. You taking the day off is not different than when you are supposedly working…"

    Mallion: "Haven't even started yet and everyone wants to quit"

    Mallion: "Iam trying to set up for trading"

    SPIVAK: "15k"

- ¶41(q): Later, on the same date [9/8/2016], SPIVAK and Mallion exchanged a series of text messages with SPIVAK, Mallion, SMIRNOVA, and Co-Conspirator 1 regarding the sale of USLG:

2

> SPIVAK: "This is exactly what Olga said was going to happen !!!!"
>
> SPIVAK: "Everyone was getting money but the company"
>
> Mallion: "What ! This is crazy"
>
> SPIVAK: "The deal is done !!!!"
>
> Manion: "Ok"
>
> Mallion: "Haven't even gotten the free trading yet o well"
>
> SPIVAK: "No money tmoro u can lose our number!! !"
>
> Mallion: "Really wow !"
>
> Mallion: "Actually not doing this every week"
>
> Mallion: "I stopped selling private two weeks ago"
>
> SPIVAK: "Well you only sent us 15k total! Jason stopped caused you stole his leads ! Now I'm stuck with all the overhead! ! !"
>
> Mallion: "Really like the 60000 thousand from Shane two weeks after he sent to escrow Jim gates sent him a purchase order for 60000 at 25 cents free trading"
>
> SPIVAK: "Well you just don't understand"
>
> Mallion: "Wants to know when he's getting his free trading and he got restricted at .50 cents"

- ¶41(r): On or about September 9, 2016, SPIVAK sent a text message to Mallion, SMIRNOVA, and Co-Conspirator 1 regarding the sale of USLG stock:

   > SPIVAK: "Just call [Co-Conspirator 1] already. We can't make payroll "

- ¶41(z): On or about September 29, 2016, SPIVAK and Mallion exchanged a series of text messages with SPIVAK, Manion, SMIRNOVA, and Co-Conspirator 1 regarding the proceeds of USLG stock sales:

   > SPIVAK: "And another day that we ain't got no money! Just sayin…

3

>> Mallion: "Yea I know broker is wiring money today so they say"

- ¶41(pp):  On or about November 17, 2016, Co-Conspirator 1 sent a series of text messages to SPIVAK and SMIRNOVA regarding restricted stock investments, Mallion and Co-Conspirator 2:

  > Co-Conspirator 1: "Received $25k Victim-8 & $50k Victim-9"

  > Co-Conspirator 1: "I strongly recommend we cut off Richard [Mallion] & [Co-Conspirator 2]'s uslg email"

Further, Count 1 of the SSI identifies only four text messages that Ms. Smirnova allegedly sent over the duration of the four-year conspiracy:

- ¶41(xx): On or about April 12, 2017, SMIRNOVA sent a text message to Co-Conspirator 1 regarding Mallion and USLG shares:

  > SMIRNOVA: "I guess we are going to see Richard on Friday, he's been talking with [redacted] and has a proposal. He also got our stock up over .50"

- ¶41(ddd): On or about October 23, 2017, SMIRNOVA exchanged a series of text messages with Co-Conspirator 1 regarding the trading of USLG shares:

  > SMIRNOVA: "Paul is asking you to check if we can get info from DTC on who is trading stock"

  > Co-Conspirator 1: "Pretty sure the answer is no. When it's book entry it's more anonymous but I'll check when I get back"

  > SMIRNOVA: "Paul knows for sure Richard sold 30000 shares Friday, one of the pirates told him we can get proof from dtc"

- ¶41(eee): Later the same day [10/23/2017], SMIRNOVA exchanged a series of text messages with Co-Conspirator 1 regarding the trading of USLG shares:

  > SMIRNOVA: "[BONGIORNO] is asking about his stock...is pawl going to sign those? He refused last week and I don't know what to tell chris at this point" Co-Conspirator 1: "He said he will"

4

- ¶41(ttt): On or about April 12, 2018, SMIRNOVA exchanged a series of text messages with Co-Conspirator 1 regarding the trading of USLG shares:

  > Co-Conspirator 1: "Urn that's a weird way to disclose the financials" SMIRNOVA: "I know! What's even more weird is that it was good enough for OTC to take the stop sign off."
  >
  > Co-Conspirator 1: "I don't think that will last very long though but good luck. Glad I was able to sell my shares before this"
  >
  > SMIRNOVA: "I'm glad you did!!! It's a good time to sell."

Count 2 charges Ms. Smirnova, Mr. Spivak, and Mr. Scott with conspiracy. (*Id.* at ¶ 43.) The overt acts described in Count 2 are even more devoid of reference to Ms. Smirnova. That count relies, in part, upon a series of three recorded meetings that were allegedly undertaken in furtherance of the conspiracy. (*See id.* at ¶¶ 46(a)-46(n).) Notably, Ms. Smirnova is described as having been present at only three of those meetings. (*See id.* at ¶¶ 46(a), 46(b), 46(l).) And there is no reference to any statements that Ms. Smirnova made. (*See, generally, id.*). The reason is that during these meetings on February 15, 2021 (meeting on a boat in Fort Lauderdale, FL) and June 2, 2021 (meeting in a noisy restaurant)[3], Ms. Smirnova is accompanied by and diligently attending to her three-year old daughter. For the meeting on March 5, 2021 (meeting at USLG office in conference room),[4] Ms. Smirnova is fleetingly present at certain points of the conference room meeting, while her three-year old daughter is also present in the USLG office. One's mere presence is insufficient to establish liability in connection with a criminal conspiracy. *See, e.g., United States v. Pearce*, 912 F.2d 159, 162 (6th Cir. 1990) ("[M]ere presence [at the crime scene] does not by itself demonstrate any tacit or

---

[3] *See* SSI at ¶¶ 46(a) and 46(l).

[4] *See* SSI at ¶¶ 46(b).

mutual understanding" between alleged co-conspirators.); *United States v. Hughes*, 505 F.3d 578, 588 (6th Cir. 2007) ("[M]ere association with conspirators is not enough to establish participation in a conspiracy.")

> **B. Although none of the remaining counts are alleged against Ms. Smirnova, Counts 48, 49, and 50 include allegations about her conduct.**

The final three counts of the SSI allege conspiracy to obstruct justice (Count 48); false declarations before the Court (Count 49); and obstruction of a federal investigation (Count 50).[5] Those final three counts allege conduct that occurred after Ms. Smirnova's husband, Mr. Spivak, was arrested and detained. Ms. Smirnova is not charged as a defendant in any of counts 48-50. They are asserted against only Mr. Spivak. Each of those counts, however, incorporates Counts 1 and 2, as well as all of the paragraphs that precede those counts – all of which include allegations about Ms. Smirnova's conduct.

- "The factual allegations of paragraphs 1 through 36 and Counts 1, 2, 49 and 50 this Second Superseding Indictment are hereby re-alleged and incorporated as if fully set forth herein." (*See* SSI at ¶ 55 (in Count 48,);

- "The factual allegations of paragraphs 1 through 36 and Counts 1, 2, 48 and 50 this Second Superseding Indictment are hereby re-alleged and incorporated as if fully set forth herein." (¶ 85 (in Count 49); and

---

[5] The remainder of the SSI consists of: (a) 14 counts of using a manipulative or deceptive device in connection with the sale of a security (Counts 5-13, 18-22); (b) 21 counts of wire fraud occurring between 2016 and 2019 (Counts 23-43); and (c) four counts of wire fraud occurring between February 15, 2021 and June 7, 2021 (Counts 44-47). Ms. Smirnova is neither charged, nor mentioned, in any of those counts.

6

- "The factual allegations of paragraphs 1 through 36 and Counts 1, 2, 48 and 49 this Second Superseding Indictment are hereby re-alleged and incorporated as if fully set forth herein." (¶ 92 (in count 50).)

Further, the allegations in support of Counts 48, 49, and 50 make multiple references to Ms. Smirnova. (*See, e.g.,* SSI at ¶¶ 71-77 (in Count 49, referring to Ms. Smirnova's participation in recorded jail calls with her husband); ¶¶ 90-91 (in Count 49, quoting Ms. Smirnova's conversation with her husband while he is incarcerated); ¶ 94 (in Count 50, quoting Ms. Smirnova's recorded conversation with her husband).) Further, in the final conspiracy count (Count 48), the Government does not identify Mr. Spivak's alleged co-conspirators. Instead, it makes reference only to Mr. Spivak and "others" or "members of the conspiracy and others." (SSI at ¶¶ 56, 62.)

The prejudice to Ms. Smirnova is patent. The Government makes few allegations about her unspecified conduct in support of Counts 1 and 2. But that dearth of allegations is obscured by the fact that Counts 48 through 50 – in which she is not charged – are replete with references to Ms. Smirnova and her conversations with her husband, who is alleged to have engaged in a conspiracy with unidentified people ("members of the conspiracy and others") to obstruct justice. (SSI at ¶¶ 62-65.).

A trial on Counts 48-50 in conjunction with the trial of the other preceding counts in the SSI invites a trial of unrelated non-securities fraud allegations within a trial involving two independent securities fraud conspiracies involving multiple years and numerous hours of recorded testimony. A trial that includes Counts 48-50 will alone involve nearly a hundred hours of jail calls.

Mr. Spivak is also identified as one of Ms. Smirnova's co-conspirators in Counts 1 and 2. If Counts 1 and 2 are tried in the same trial as Counts 48 through 50, the jury will

7

hear relatively little evidence about Ms. Smirnova herself with respect to Count 1 and 2, but the Government will present substantial evidence about the alleged criminal conduct of other people, and her interaction with those with individuals, related to Counts 48 through 50. Evidence concerning Counts 48 through 50 will improperly bolster the evidence against Ms. Smirnova with respect to Counts 1 and 2 – particularly given that Mr. Spivak's alleged co-conspirators are not named in Count 48. The jury will necessarily be directed to conclude that Ms. Smirnova engaged in criminal conduct with respect to Counts 48 through 50 and, thus, she must have engaged in the conduct described in Counts 1 and 2.

In sum, the potential for a finding of guilt by association is manifest. This Court must eliminate that risk by bifurcating trial on Counts 1 and 2 from a trial that includes Counts 48, 49, and 50.

## II. Law and Argument

### A. Rule 14 authorizes the Court to bifurcate counts for trial to prevent prejudice.

In the Sixth Circuit, courts analyze a request to bifurcate counts under Rule 14 of the Federal Rules of Criminal Procedure. *See, e.g., United States v. Ingersoll*, No. 14-CR-20216, 2014 WL 5782697, at *3 (E.D. Mich. 2014). That Rule provides:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). The resolution of a motion under Rule 14 is within the discretion of the trial court. *See United States v. Hang Le-Thy Tran*, 433 F.3d 472, 478 (6th Cir.

8

2006). In this context, a trial court abuses its discretion when denying the request to bifurcate substantially prejudices the defendant seeking that relief. *Id.*

A defendant is substantially prejudiced – and entitled to relief under Rule 14 – when trying multiple counts together in the same trial would "compromise a specific trial right . . . or prevent the jury from making a reliable judgment about guilt or innocence." *United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006) (quoting *Murr v. United States*, 200 F.3d 895, 904 (6th Cir. 2000)). In determining whether a defendant will suffer prejudice, courts consider "whether spillover evidence would incite or arouse the jury to convict on the remaining counts, whether evidence was intertwined, the similarities and differences between the evidence, the strength of the government's case, and the ability of the jury to separate the evidence." *United States v. James*, 496 F. App'x 541, 546 (6th Cir. 2012).

The risk of prejudice is especially high in cases – like this one – with multiple defendants and multiple counts. "[I]f the evidence against one defendant cannot be compartmentalized and the jury is likely to consider it to the prejudice of a defendant against whom it is not properly directed, then severance is warranted." *United States v. Lawson*, No. 3:08-21-DCR, 2009 WL 1158666, at *2 (E.D. Ky. Apr. 27, 2009) (citing *United States v. Inigo*, 925 F.2d 641, 655 (3d Cir. 1991); *United States v. Edmond*, 935 F.2d 1511, 1516 (7th Cir. 1991)). This is particularly true where two different schemes alleged in the indictment are "intertwined" and evidence probative of one is probative of the other. *Id.*

9

**B.   To prevent substantial prejudice to Ms. Smirnova, the Court should bifurcate Counts 1 and 2 for separate trial from Counts 48, 49, and 50.**

Here, the risk of substantial prejudice to Ms. Smirnova is patent. She is charged only in Counts 1 and 2, which allege separate conspiracies to commit securities fraud. The SSI makes scant allegations about her conduct in furtherance of those conspiracies. Indeed, with the exception of four text messages, all references to Ms. Smirnova's overt acts in furtherance of the conspiracies allege that she either received a text message, or happened to be present during a recorded conversation. In sum, the SSI reveals that the Government has, at best, thin evidence about Ms. Smirnova's participation in the conspiracies alleged in Counts 1 and 2.

Unfortunately for Ms. Smirnova, however, the SSI includes Counts 48, 49, and 50, which, although not alleged against her, are replete with references to conversations in which she participated with her husband, who is charged in those counts. And the SSI is silent with respect to the identity of Mr. Spivak's alleged co-conspirators in Count 48. Accordingly, if Counts 1 and 2 are tried with Counts 48 through 50, the same jury that will decide Ms. Smirnova's guilt or innocence on Counts 1 and 2 will hear evidence about Mr. Spivak's alleged criminal conduct in Counts 48 through 50, and about Ms. Smirnova's conduct with respect to Counts 48 through 50 (where she is not charged as a Defendant), and – by virtue of the SSI's silence about Mr. Spivak's alleged co-conspirators – be directed to conclude that Ms. Smirnova also committed wrongful acts in furtherance of Counts 48 through 50. Frankly, that very conclusion is intended to

10

bolster the insufficient evidence of Ms. Smirnova's participation in the separate securities fraud conspiracies charge in Counts 1 and 2.[6]

The evidence about Counts 48 through 50 is "spillover evidence," and the prejudice resulting from spillover evidence is a recognized danger that can be cured via relief under Rule 14. *See, e.g., James*, 496 F. App.'x at 546. That danger is particularly prevalent here, where the evidence related to the conspiracy counts will be "intertwined with" the evidence related to the remaining counts that are not alleged against Ms. Smirnova. *Id.*; *see also Lawson*, 2009 WL 1158666 at *2 ("[I]f the evidence against one defendant cannot be compartmentalized and the jury is likely to consider it to the prejudice of a defendant against whom it is not properly directed, then severance is warranted."). Spillover evidence about Counts 48 through 50 will "prevent the jury from making a reliable judgment about [Ms. Smirnova's] guilt or innocence" on Counts 1 and 2. *Caver*, 470 F.3d at 238.

In sum, the evidence about Ms. Smirnova that will apparently be offered to support Counts 48-50 is inherently prejudicial. "It takes no stretch of the imagination to understand why a reasonable juror might find it difficult to pry" allegations about Ms. Sminova's conversations with her husband "from the mind while contemplating" the offenses actually charged against her. *United States v. Moore*, 628 F. Supp. 3d 737, 741 (E.D. Mich. 2022) (citing *United States v. Copeland*, 14 M.J. 835, 836 (A.F.C.M.R. 192 (per curiam) ("In actuality, it stonewalls legitimate analysis with the observation that

---

[6] The risk of proceeding to trial without any identification of Mr. Spivak's co-conspirators in Count 48 is real and significant. It is well-established that "[a] defendant may be indicted and convicted despite the names of his co-conspirators being unknown, as long as the government presents evidence to establish an agreement between two or more persons." *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991).

11

'once a thief always a thief.'").) The jury could very likely rely on the Government's contention that Ms. Smirnova was involved (if not indicted) in the conduct that forms the basis for Counts 48 through 50 to conclude that she is guilty of the conspiracy offenses set forth in Counts 1 and 2. *See, e.g., id*. But evidence about Counts 48-50 will not have any bearing on Counts 1 and 2 (despite the SSI's incorporation of those counts into each of counts 48-50). Accordingly, evidence about those final counts will serve as an improper attempt to bolster the evidence against Ms. Smirnova on Counts 1 and 2, and will "prevent the jury from making a reliable judgment about [her] guilt or innocence." *Caver*, 470 F.3d at 238.

Further, given the complexity of the case, and the fact that the "similar evidence" will be offered to support all counts in the SSI, the jury's ability to compartmentalize the evidence is doubtful. *James*, 496 F. App'x at 546; *see also Lawson*, 2009 WL 1158666 at *2 (bifurcating counts for trial, observing, "[d]ue to the complexity of this issue and the instructions that would need to be given, there is a serious risk that the jury would be unable to compartmentalize this evidence and would likely consider it against Nighbert when assessing his guilt on Counts 1–5"). The only way to prevent substantial prejudice to Ms. Smirnova in this case is to try Counts 1 and 2 in a separate trial from Counts 48 through 50.

### III. Conclusion

Ms. Smirnova will be substantially prejudiced if Counts 1 and 2 are tried in the same trial as Counts 48 through 50. The scant evidence in support of her role in the conspiracies described in Counts 1 and 2 will be improperly bolstered by evidence about Counts 48 through 50. This spillover evidence will prevent the jury from making a reliable decision about her guilt or innocence. Bifurcating Counts 1 and 2 from the trial

12

of Counts 48 through 50 will prevent compelling, specific, and actual prejudice to Ms. Smirnova. Accordingly, she respectfully requests that the Court issue an Order bifurcating Counts 1 and 2 in the SSI from the trial on Counts 48 through 50.

                        Respectfully submitted,

/s/  *John F. McCaffrey*
John F. McCaffrey (0039486)
Anthony R. Petruzzi (0069102)
Melissa Z. Kelly (0077441)
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
Telephone:	216.696.3486
Facsimile:	216.592.5009
Email:		john.mccaffrey@tuckerellis.com
		anthony.petruzzi@tuckerellis.com
		melissa.kelly@tuckerellis.com

*Attorneys for Defendant Olga Smirnova*

13

**CERTIFICATE OF SERVICE**

    I hereby certify that on January 10, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

<u>/s/ *John McCaffrey*</u>
John F. McCaffrey (0039486)
Anthony R. Petruzzi (0069102)
Melissa Z. Kelly (0077441)

*Attorneys for Defendant Olga Smirnova*

14