IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CASE NO. 1:21-CR-00491-JPC-2 |
| Plaintiff, | ) JUDGE J. PHILIP CALABRESE |
| v. | ) |
| PAUL SPIVAK, et al., | ) **REPLY IN SUPPORT OF OLGA SMIRNOVA TO BIFURCATE COUNTS 1 AND 2 IN THE SECOND SUPERSEDING INDICTMENT FROM THE SAME TRIAL AS COUNTS 48, 49 AND 50** |
| Defendants. | ) |

The rationale for Ms. Smirnova's request that the Court bifurcate Counts 1 and 2 from Counts 48 through 50 are simple. She is named in only the first two counts of the SSI, and those counts are supported by scant allegations against her. And while she is not named in Counts 48 through 50 (as they allege conspiracies purportedly undertaken after the arrest of her husband, Mr. Spivak, and include allegations about her conversation with him), those counts incorporate the allegations in Counts 1 and 2, and also include additional allegations about Ms. Smirnova's conduct.

The resulting prejudice is easy to discern, as the SSI invites a finding of guilt by association. Evidence concerning Counts 48 through 50 will improperly bolster the evidence against Ms. Smirnova with respect to Counts 1 and 2 – particularly given that Mr. Spivak's alleged co-conspirators are not named in Count 48. The jury will necessarily be directed to conclude that Ms. Smirnova engaged in criminal conduct with respect to Counts 48 through 50 and, thus, she must have engaged in the conduct

described in Counts 1 and 2. The Court must act to prevent this prejudice by bifurcating trial on Counts 1 and 2 from trial on Counts 48 through 50.

The Government's argument in response proves Ms. Smirnova's point. According to the Government, the conspiracies alleged in Counts 1 and 2 "were the reasons for the FBI's presence at USLG's offices," and that presence instigated the conduct – by people other than Ms. Smirnova – that underlie Counts 48 through 50. (Gov.'s Opp. at 14.) In other words, the Government concedes that, in its view, evidence about Counts 1 and 2 is necessary to support its case with respect to Counts 48 through 50.[1] Absent bifurcation, the same jury that decides whether to convict Ms. Smirnova on Counts 1 and 2 will hear evidence about counts in which she is not charged but which involve allegations about her conversations with Mr. Spivak. The risk of spillover evidence is patent, as "a reasonable juror might find it difficult to pry" allegations about Ms. Sminova's conversations with her husband "from the mind while contemplating" the offenses actually charged against her. *United States v. Moore*, 628 F. Supp. 3d 737, 741 (E.D. Mich. 2022) (citing *United States v. Copeland*, 14 M.J. 835, 836 (A.F.C.M.R. 192 (per curiam). The risk that the jury will be unable to make a "reliable judgment about [her] guilt or innocence" must be ameliorated by bifurcation. *United States v. Caver*, 470 F.3d 220, 238 (6th Cir. 2006).

The Government's response to this patent prejudice is the conclusory assertion that "[t]he case at hand is not one of such complexity that the jury will not be able to

---

[1] The Government's argument that evidence about Ms. Smirnova's conduct with respect to Counts 48 through 50 is "relevant to her consciousness of guilt, intent, and knowledge of the offenses she is charge with" is beside the point. The mere fact that such evidence *might* be admissible does not lessen its prejudicial effect, particularly where the allegations against Ms. Smirnova with respect to Counts 1 and 2 are so limited.

compartmentalize the evidence and make individual determinations for each count." (Gov.'s Opp. at 14.) But the Government's reliance on the two cases it cites does not preclude the relief sought by Ms. Smirnova. Indeed, both *United States v. Rugiero*, 20 F.3d 1387 (6th Cir. 1994), and *United States v. Rox*, 692 F.2d 453 (6th Cir. 1982), stand for the basic conclusion that a jury is presumed to be "capable of sorting out evidence and considering each out and each defendant separately," unless the defendant "carries [her] strong burden of showing to the contrary." *Rugerio*, 20 F.2d at 1391 (quoting *United States v. Swift*, 809 F.2d 320, 322 (6th Cir. 1987); *see also Rox*, 692 F.2d at 454.

The Government's argument on this important point goes no further than merely citing *Rugerio* and *Rox*. It does not explain how it is that a jury instruction will prevent the prejudice identified by Ms. Smirnova. It is well established that, the risk of prejudice is especially high in cases – like this one – with multiple defendants and multiple counts. *See, e.g., United States v. Lawson*, No. 3:08-21-DCR, 2009 WL 1158666, at *2 (E.D. Ky. Apr. 27, 2009) ("[I]f the evidence against one defendant cannot be compartmentalized and the jury is likely to consider it to the prejudice of a defendant against whom it is not properly directed, then severance is warranted."). This is particularly true where two different schemes alleged in the indictment are "intertwined" and evidence probative of one is probative of the other. *Id.*

And that is precisely the case here. The conspiracies alleged in Counts 1 and 2 arise out of the same purported "pump and dump" scheme. The conspiracies charged in Counts 48 through 50, which allege conduct after the arrest of Mr. Spivak on charges related to those conspiracies, are "intertwined" with evidence about Counts 1 and 2. The Government's case with respect to Counts 48 through 50 will inevitably include evidence about the conduct and statements of individuals other than Ms. Smirnova, as

3

well as evidence about her own conduct and statements. And because she is named in Counts 1 and 2, and those counts are incorporated into Counts 48 through 50, the jury will be presented with a significant amount of evidence that bolsters the scant allegations in support of Counts 1 and 2 by tying Ms. Smirnova to the conduct of other people.

In sum, the risk of spillover evidence – which the jury will have difficulty parsing because the charges alleged in the SSI are intertwined – creates the very real possibility that the jury will convict Ms. Smirnova on an unreliable basis. That is the hallmark of prejudice that merits bifurcation under Rule 14. *Caver*, 470 F.3d at 238. The only way to prevent substantial prejudice to Ms. Smirnova in this case is to try Counts 1 and 2 in a separate trial from Counts 48 through 50.

Respectfully submitted,

/s/ *John F. McCaffrey*
John F. McCaffrey (0039486)
Anthony R. Petruzzi (0069102)
Melissa Z. Kelly (0077441)
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
Telephone: 216.696.3486
Facsimile: 216.592.5009
Email: john.mccaffrey@tuckerellis.com
anthony.petruzzi@tuckerellis.com
melissa.kelly@tuckerellis.com

*Attorneys for Defendant Olga Smirnova*

4

**CERTIFICATE OF SERVICE**

I hereby certify that on April 5, 2024, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ *John McCaffrey*
John F. McCaffrey (0039486)
Anthony R. Petruzzi (0069102)
Melissa Z. Kelly (0077441)

*Attorneys for Defendant Olga Smirnova*