IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:21-CR-00491 |
| | ) | JUDGE J. PHILIP CALABRESE |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| PAUL SPIVAK, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**RESPONSE OF DEFENDANTS PAUL SPIVAK AND OLGA SMIRNOVA TO THE
GOVERNMENT'S SECOND NOTICE OF DISCOVERY STATUS**

## I.      INTRODUCTION

In its Second Notice of Discovery Status ("Second Notice") (ECF #334), the Government acknowledges its obligations under *Brady/Giglio*, as it has repeatedly done at court conferences and each time it produced documents. Yet, to date, the Government has produced *no* exculpatory evidence. Further, now less than two months from trial, the Government notifies the parties and this Court in its Second Notice that it does not intend to produce *Jencks* material until the day before each witness testifies. Defendants respectfully request that the Court exercise its inherent power to order that the Government (a) identify and produce all *Brady/Giglio* material *forthwith*; and (b) comply with the Court's Second Amended Pretrial Order (ECF #326) which "strongly encouraged" the Government's production of *Jencks* material before the final pretrial scheduled for July 22, 2024.

II.     **THE GOVERNMENT HAS NOT FULFILLED ITS OBLIGATIONS UNDER *BRADY/GIGLIO***

In the Second Notice, the Government writes, with respect to the production of exculpatory materials:

> The Government remains mindful of its obligations under *Brady, Kyles v. Whitley*, 514 U.S. 419 (1995), and *Giglio v. United States*, 405 U.S. 150 (1972) and the requirement to divulge to the defense at or before the time of trial, and in time for effective use at trial, all information subject to disclosure under those authorities. Indeed, the Government believes any Brady material would have been produced by the Court's discovery deadline of June 30, 2023, based on our limited understanding of the defense theories without any reciprocal discovery or other disclosures by the defense.

The Government's disclosure is misleading. First, the Government has failed to produce all exculpatory evidence under *Brady*. For example, the Government sent victim letters to USLG shareholders and Defendants are aware that many shareholders responded to express their support for the Company, yet none of this exculpatory evidence has been produced.  As another example, the Government has not produced all notes from FBI interviews with employees that contain exculpatory statements. Second, the Government has yet to produce *any* materials required to be produced pursuant to *Giglio v. United States*, 405 U.S. 150 (1972). For example, the Government is fully aware that there are multiple witnesses cooperating with the Government in exchange for valuable consideration. Yet it has produced no discovery demonstrating that Government witnesses have incentives or biases to inculpate the defendants in this case. *Thomas v. Westbrooks*, 849 F.3d 659, 666 (6th Cir. 2017) (holding that evidence of a government witness' bias is *Brady* material); *Virgil v. City of Newport*, 545 F. Supp. 3d 444, 470 (E.D. Ky. 2021) ("The duty to disclose under *Brady* encompasses impeachment evidence") (citation omitted).

*Brady* obligates the Government to disclose evidence favorable to an accused when such evidence is material to guilt or punishment. *See Brady v. Maryland,* 373 U.S. 83, 87 (1963).  This duty covers not only exculpatory materials, but also information that could be used to impeach a key government witness. *See Giglio v. United States*, 405 U.S. 150, 154 (1972). In the context of *Brady*, a defendant is deprived of a fair trial where there is a reasonable probability that the Government's suppression of the evidence affected the outcome of the case or where the suppressed evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict," *Kyles v. Whitley*, 514 U.S. 419, 434-35 (1995).

The Sixth Amendment affords all criminal defendants the right to cross-examine witnesses about matters especially important to their credibility, such as their potential bias or motive to present false testimony at trial. *See Davis v. Alaska*, 415 U.S. 308, 315-16 (1974). That the Government and the witness have some "understanding or agreement as to a future prosecution," for example, is important to the witness's credibility. *Giglio* 405 U.S. at 154-55. Indeed, in *Giglio*, the prosecution had promised a coconspirator of the defendant that he would not be prosecuted if he testified against the defendant. The Court concluded that if information had been disclosed to the defense, there was a reasonable probability that the defendant could have changed the outcome of the trial by attacking the credibility of the co-conspirator's testimony. *Giglio*, 405 U.S. at 154-55. For this reason, *Giglio* requires that the Government disclose all information that may be used to impeach the credibility of prosecution witnesses. *Id*. at 154; *accord United States v. Presser*, 844 F.2d 1275, 1282 (6th Cir. 1988); *United States v. Thompson*, No. 2:08-cr-20397-JPM-dkv-2, 2009 U.S. Dist. LEXIS 140599, *3 (W.D. Tenn. June 9, 2009).

Although there is no statute that mandates when the Government must produce *Brady* and *Giglio* materials, the concept of a "fair trial" necessitates the opportunity to prepare and present a

defense.  In order to effectuate that right, the defense must be made aware of materially favorable evidence in advance of trial to afford them sufficient time to investigate, develop and present an effective defense to the allegations.  *See* U.S. Const. Amen. VI.  Accordingly, the interests in preserving and ensuring the defendant's right to due process at issue in *Brady* can only be effectuated if the attendant evidence is disclosed at a time and in a manner that permits counsel to effectively utilize and present said evidence at trial.  *See United States v. Presser*, 844 F.2d 1275 (6th Cir. 1988). For this reason, numerous federal courts of appeals have held that the Government must disclose discovery that could be used to impeach Government witnesses "in time for its effective use at trial." *United States v. Coppa (In re United States)*, 267 F.3d 132, 137 (2d Cir. 2001); *see also Maynard v. Gov't of the Virgin Islands*, 392 Fed. Appx. 105, 114 (3d Cir. 2010) ("The government must disclose *Brady* material sufficiently in advance of trial to enable the defendant to use the evidence in a meaningful fashion, and, in this case, the late hour of the government's disclosure prevented Maynard from using the evidence for any investigatory purpose."); *United States v. Lee*, 573 F.3d 155, 164-65 (3d Cir. 2009) (concluding that the government's failure to disclose exculpatory evidence prior to trial under Rule 16 of the Federal Rules of Criminal Procedure prejudiced the defendant because he was "deprived of the opportunity to prepare meaningfully for trial"); *United States v. Moore*, 923 F.2d 910, 912 (1st Cir. 1991) (*Brady* "requires the government to provide a defendant with significant 'exculpatory' information in its possession before trial").

Defendants Spivak and Smirnova are aware that some or all of the Government's witnesses have been induced to cooperate with the Government through cooperation plea agreements or offers of immunity. There is no reason that the Government should not produce such materials now. Accordingly, given the Government's contention that it has complied with its *Brady*

4

obligations, there is no reason that the Court cannot and should not order the Government to produce all *Giglio* materials (plea agreements, immunity agreements, and the transcripts of any plea or sentencing hearings for witnesses who the Government expects to call at trial), before July 12, 2024.

### III. THE GOVERNMENT INTENDS TO IGNORE THIS COURT'S STRONG ENCOURAGEMENT THAT *JENKS* MATERIALS BE PRODUCED BEFORE THE FINAL PRETRIAL HEARING

On January 17, 2024, the Court issued a scheduling order setting out the relevant dates in advance of the trial scheduled for August 12, 2024 (the  "Scheduling Order") (ECF 293). Indeed, the Court explicitly ordered that the Government produce *Jencks* materials and the defense produce reverse *Jencks* materials "as early as possible and preferably before the final pretrial conference," scheduled for July 22, 2024. While Defendants have sought the early production of any *Jencks* materials for years, production before July 22, 2024, would *at least* provide Defendants and their counsel approximately three weeks to prepare for trial.  The Court reiterated its encouragement for the early production of *Jenks* material in the Second Amended Pretrial Order issued on May 22, 2024 (ECF #326).

The Court's Order regarding the early production of *Jencks* is in accord with the Court's standing rules. Indeed, the Court has ordered generally that:

> Jencks *and Reciprocal* Jencks *Material.*
> Unless there is a well-founded concern for the safety of the witness, the Court strongly encourages the parties to provide *Jencks* and reciprocal *Jencks* material as early as possible and preferably before the final pretrial conference.   As discussed with counsel on January 16, 2024, the Court anticipates taking up this issue in greater detail, if necessary, at another status conference.

*See Id.* at p.11.

In the Second Notice, the Government notifies the Court and Defendants that it does not intend to follow the Court's Second Amended Pretrial Order. The Government writes:

> The Government understands the Court's Pretrial Order as setting a timetable for the Government to provide information and assistance the undersigned offered to provide throughout the pendency of this case—not as an order requiring the Government to do more than the law requires under Rule 16, *Brady, Kyles, Giglio*, Rule 26.2, or the Jencks Act, 18 U.S.C. §3500 *et seq*., to which the Government would object. . . . In addition, while the Government has previewed for defense counsel some statements made by potential witnesses as part of its presentation, the Government has the right under the Jencks Act to withhold witness statements until after the witness has testified on direct examination. United States v. Minsky, 963 F.2d 870, 876 (6th Cir. 1992); United States v. Brazil, 395 F. App'x 205, 215 (6th Cir. 2010); United States v. Presser, 844 F.2d 1275, 1283 (6th Cir. 1988) ("The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial.") (citations omitted). . . . Despite this clear line of cases, **the government does not intend, absent unanticipated circumstances, to withhold Jencks material until the close of each witness's direct examination, and expects to turn over Jencks material, at a minimum, on or before the day before each witness testifies**.

Second Notice at 2-3 (emphasis supplied). Rather than comply with the Court's Second Amended Pretrial Order, the Government intends to produce *Jencks* materials the day before each witness testifies.[1] The Government's sole basis for this position is that it can wait to produce *Jencks* materials until after a witness testifies regardless of the Court's strong preference or the Defendants' Constitutional rights. The Government's position is not reflective of a party seeking justice or the orderly administration of a trial.  Instead, it is emblematic if a litigant trying to gain and unfair advantage and win at all costs.

---

[1] The Government never objected to the Court's Pretrial Orders. The Court filed the Scheduling Order on January 17, 2024 and a Second Amended Pretrial Order on May 22, 2024. The Government has waived any objection to the Court's Orders.

Under the Sixth Amendment of the United States Constitution, a criminal defendant has a right to counsel and the right to effective assistance of counsel. U.S. Const. amend. VI. In a white collar case like this, which is extremely complicated and based largely on the testimony of cooperating witnesses, a defendant cannot enjoy these rights if counsel does not have sufficient time to review the statements of the witnesses who will testify against the defendant. *See United States v. Hinton*, 631 F.2d 769, 782 (D.C. Cir. 1980) (defense counsel was provided with voluminous *Jencks* material at a suppression hearing and the court found that the prosecutor failed to recognize "the critical importance of the 302's," and as a result, defendant was "deprived of the 'informed professional deliberation' of counsel guaranteed by the Sixth Amendment"); *see also United States v. Holmes*, 722 F.2d 37, 41 (4th Cir. 1983) (providing *Jencks* materials one day before trial began did not "afford[] a reasonable opportunity to examine and digest" the documents).

For this reason, it is common practice for United States Attorney's Offices across the United States (especially in white collar cases) to produce *Jencks* materials, including FBI FD-302s, weeks if not months before trial. *See ABA Standards for Criminal Justice* § 11-2.2; *United States v. Minsky*, 963 F.2d 870, 876 (6th Cir. 1992) ("While technically the government may withhold Jencks Act material until the conclusion of the direct examination of the witness, the better practice – and that followed in most federal courts today – is for the government to produce such material well in advance of trial so that defense counsel may have an adequate opportunity to examine" the documents); *Holmes*, 722 F.2d at 40 ("Many times, however, in cases where there are many statements or where the bulk of witness statements is large, the government will agree, or it may even be ordered, to deliver material at an earlier time"). Indeed, the Department of Justice's Justice Manual states:

> **Timing of disclosure.** Due process requires that disclosure of exculpatory and impeachment evidence material to guilt or innocence be made in

7

> sufficient time to permit the defendant to make effective use of that information at trial. *See, e.g. Weatherford v. Bursey*, 429 U.S. 545, 559 (1997); *United States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993). In most cases, the disclosures required by the Constitution and this policy will be made in advance of trial.

Justice Manual § 9-5.001(D). And why wouldn't the Department of Justice, whose job it is to seek justice, produce *Jencks* materials well in advance of trial? One inference is that the Government strives to gain an unfair advantage by limiting defense counsel's time to prepare for trial and a fulsome cross-examination of witnesses at trial.

Contrary to the Government's position, the *Jencks* Act is not the only legal authority at issue. "Courts have long recognized that they have inherent power not limited by statute or rule to insure that due process of law is provided and that criminal trials are fair and efficient." *United States v. Narciso*, 446 F. Supp. 252, 270 (E.D. Mich. 1976). In most instances, the Court is not forced to intercede because the Government is confident in its case and forgoes reliance on sharp practices. In *United States v. Narciso*, in response to the Government's argument that it did not need to produce FD-302 statements until after the witness finished testifying on direct examination, the Court found that "in view of the complexity of the case and the large number of witnesses, strict adherence to the schedule imposed by the *Jencks* Act can be expected to lengthen the trial considerably" and that delayed production of *Jencks* material would "seriously hamper the efficient, orderly and fair conduct of the trial." 446 F. Supp. at 270. Further, the Court held that "denial of the information requested here, because of an overly strict adherence to the *Jencks* Act raises potential deprivations of due process and effective assistance of counsel." Accordingly, "the time restrictions of the Jencks Act [must] be overridden" and the Government was required to produce FD-302 statements a month before the start of trial.

8

Here, the Government has already: (1) sought pretrial detention against defendant Spivak, despite the fact that he is not charged with a crime of violence and has no criminal record; and (2) charged defendant Smirnova with federal crimes despite a glaring absence of sufficient evidence of her involvement in a conspiracy to violate the federal securities laws.

**IV.    Conclusion**

For the reasons stated above, in order to afford defendants a meaningful opportunity to contest the charges against them with the effective assistance of counsel, defendants respectfully request that the government be ordered (1) to disclose all *Brady/Giglio* material immediately; and (2) under the Court's Scheduling Order, to produce all Jencks material by July 22, 2024.

Respectfully submitted,

/s/ *David L. Axelrod*
David L. Axelrod (Admitted Pro Hac Vice)
Lauren W. Engelmyer (Admitted Pro Hac Vice)
BALLARD SPAHR LLP
1735 Market Street
Philadelphia, PA 19103
Telephone:    215.864.8639
Facsimile:    215.864.8999
Email:        axelrodd@ballardspahr.com
              engelmyerl@ballardspahr.com

*Attorneys for Defendant Paul Spivak*


/s/ *John F. McCaffrey*
John F. McCaffrey (0039486)
Melissa Z. Kelly (0077441)
Izaak Horstemeier-Zrnich (0101085)
TUCKER ELLIS LLP
950 Main Ave., Suite 1100
Cleveland, OH 44113
Telephone:    216.696.3486
Facsimile:    216.592.5009
Email:        john.mccaffrey@tuckerellis.com
              melissa.kelly@tuckerellis.com
              izaak.horstemeier-
              zrnich@tuckerellis.com

*Attorneys for Defendant Olga Smirnova*

10

## CERTIFICATE OF SERVICE

I hereby certify that on July 1, 2024, a copy of the foregoing was filed electronically.

Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

Parties may access this filing through the Court's system.


/s/  *David L. Axelrod*
David L. Axelrod (Admitted *Pro Hac Vice*)
Lauren Engelmyer (Admitted Pro Hac Vice*)*

*Attorneys for Defendant Paul Spivak*